UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MICHAEL SUSSMAN,

                           Plaintiff,                **MEMORANDUM &**
                                                    **ORDER**
        -against-                           03 Civ. 3618 (DRH) (ETB)

UNITED STATES DEPARTMENT OF
JUSTICE; UNITED STATES DEPARTMENT
OF TRANSPORTATION;
TRANSPORTATION SECURITY
ADMINISTRATION; UNITED STATES
POSTAL SERVICE; UNITED STATES
SECRET SERVICE; INTERNAL
REVENUE SERVICE,

                            Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**MICHAEL SUSSMAN**
Plaintiff Pro Se
613 Cross Street
East McKeesport, PA  15035

**ROSLYNN MAUSKOPF,**
**UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF NEW YORK**
Attorneys for Defendants
One Pierrepont Plaza
Brooklyn, NY 11201
By: Kathleen A. Mahoney, Esq.

**HURLEY, Senior District Judge**

*INTRODUCTION*

       This case arises out of Plaintiff's Freedom of Information Act ("FOIA") and Privacy Act

("PA") requests for all investigative and collection records pertaining to or naming him, made

upon various federal agencies (collectively, "government" or "Defendants"). Plaintiff alleges various failures to comply with requests, bringing claims against the United States Department of Justice ("DOJ") in Counts 1-56 and 71; the United States Department of Transportation ("DOT") in Counts 57-60; the Transportation Security Administration ("TSA") in Counts 61-64; the United States Postal Service ("USPS") in Counts 65-66; the United States Secret Service ("USSS") in Counts 67-68; and the Internal Revenue Service ("IRS") in Counts 69-70. In all, Plaintiff brought seventy-one different claims requesting equitable relief. Both parties have moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth herein, the Court grants in part and denies in part Defendants' motion, and grants in part and denies in part Plaintiff's motion.

*BACKGROUND*

From July 2002 through June 2003, Plaintiff wrote letters to various federal agencies requesting records pursuant to the FOIA and the Privacy Act. Specifically, Plaintiff sent thirty-five letters seeking agency records about himself under the FOIA/PA, four FOIA/PA requests for seven categories of documents and information relating to "No Fly" or "Selectee" lists, *i.e.* watch lists, three FOIA/PA requests for results of searches of specific databases, and, finally, two FOIA requests for agency records to the DOJ Bureau of Prisons ("BOP"). Because of the number of requests at issue, the Court will not detail the contents of each, but rather will discuss the contents of individual requests as necessary for the below analysis.

Plaintiff brought FOIA and Privacy Act claims with regard to each of these requests, save the request to the BOP (Count 71), which only garnered a claim under the FOIA. Plaintiff filed suit on June 23, 2003. Defendants filed their Answer on December 4, 2003. Defendants then

moved for summary judgment on July 16, 2004, and Plaintiff filed a cross-motion for summary

judgment on August 16, 2004. On March 31, 2005, this Court issued an order requesting

supplemental briefing on four issues. The parties provided the requested briefing.

*STANDARD*

In FOIA/PA cases, summary judgment is recognized as the primary mechanism by which

a district court will resolve the issues presented. *See Misciavige v. IRS*, 2 F.3d 366, 369 (11th

Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment, once

the documents in issue are properly identified."). A moving party is entitled to summary

judgment if, viewing the evidence in the light most favorable to the non-moving party, there is no

genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250 (1986). To prevail at the summary judgment stage in a FOIA and Privacy Act

case, a defending agency must demonstrate that its search for the requested material was

adequate and that any withheld material is exempt from disclosure. *See Carney v. United States*

*Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).

*DISCUSSION*

At issue are thirty-five FOIA/PA requests, and one FOIA request by Plaintiff. Each of the

FOIA/PA requests resulted in two legal claims: one under the FOIA and one under the Privacy

Act. The government moves for summary judgment as to all seventy-one claims pursuant to a

number of theories. First, Defendants argue that the majority of Plaintiff's claims fail for

procedural reasons, *i.e.*, Plaintiff failed to exhaust his administrative remedies. Defendants argue

that other claims fail for substantive reasons, *i.e.*, the agency did not have the records requested,

the agency released all of the records requested, or the requests were inadequate. Finally,

Defendants argue that the remaining claims fail because the requested documents were statutorily exempt from release. Plaintiff contests each of these arguments.

One thing to keep in mind while reading the below analysis is that each of the letters consisted of a number of different requests. When a request fails for procedural reasons, the entire request fails. When considering the substantive validity of a request, however, the outcome sometimes depends on the specific request. Therefore, a given letter may contain multiple requests that fail for different reasons.

After briefly surveying the legal landscape of the FOIA and Privacy Act, the Court will address the Government's motion for summary judgment. The Court will then address any remaining claims pursuant to Plaintiff's counter-motion for summary judgment.

I.      *The Statutes*

The FOIA allows persons to request any public records subject to disclosure. *See* 5 U.S.C. § 552(a)(3). The Privacy Act allows persons to request records pertaining specifically to them. *See* 5 U.S.C. § 552a(d)(1). Both allow persons to bring suit in federal district court to challenge an agency refusal to disclose. *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a(g)(1)(B).

"FOIA was enacted in order to promote honest and open government and to assure the existence of an informed citizenry in order to hold the governors accountable to the governed." *National Council of La Raza v. Department of Justice*, 411 F.3d 350, 355-56 (2d Cir. 2005) (citations and quotation marks omitted). FOIA strongly favors a policy of disclosure, and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in the Act. *See La Raza*, 411 F.3d at 355; *see also* 5 U.S.C. § 552(a)(3), (b)(1)-(9). Thus, "[u]pon request, FOIA mandates disclosure of records held

by a federal agency unless the documents fall within enumerated exemptions." *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001) (internal citations omitted); *Tigue v. United States Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002). The Supreme Court has counseled that these exceptions are to be interpreted narrowly in the face of the overriding legislative intention to make records public. *See Klamath*, 532 U.S. at 7-8.

"[I]n order to protect the privacy of individuals identified in information systems maintained by Federal agencies, it is necessary . . . to regulate the collection, maintenance, use, and dissemination of information by such agencies." 5 U.S.C. § 552a(5) (quoted in *Doe v. Chao*, 540 U.S. 614, 618 (2004)). Accordingly, Congress passed the Privacy Act. The relevant provision of the Privacy Act is 5 U.S.C. § 552a(d)(1), which provides that "[e]ach agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him . . . ." The Act defines "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C.A. § 552a(a)(5); *see also Bechhoefer v. United States Dep't of Justice*, 312 F.3d 563, 566 (2d Cir. 2002). "[T]he prescriptions of the Act do not come into play whenever a document falls into the possession of an employee of a covered agency. It is only when the document becomes incorporated into a record-keeping system under the agency's control that the Act's prescriptions apply." *Bechhoefer*, 312 F.3d at 566.

Unlike the FOIA, an information access law, the Privacy Act is an information protection law. In particular, while any individual may make a request for records pursuant to the FOIA, under the Privacy Act, only an individual, or his authorized representative, may request the individual's records. 5 U.S.C. §§ 552, 552a(d)(1). Moreover, while the FOIA applies to any type of record, the Privacy Act narrowly applies to records that agencies maintain within their "systems of records" that are retrievable by an individual's name, social security number or other or personal identifier. 5 U.S.C. §§ 552, 552a(d). Additionally, unlike the FOIA, the Privacy Act allows individuals to request that agencies amend their records. 5 U.S.C. § 552a(d)(2).

The Privacy Act requires agencies that maintain systems of records to establish procedures by which they notify requesters of whether any systems of records contain records pertaining to them. 5 U.S.C. § 552a(f)(1). Moreover, the Privacy Act requires agencies to "define reasonable times, places, and requirements for identifying an individual who requests his record or information pertaining to him before the agency shall make the record or information available to the individual." 5 U.S.C. § 552a(f)(2). Furthermore, the Privacy Act requires agencies to "establish procedures for reviewing a request from an individual concerning the amendment of any record or information pertaining to the individual, for making a determination on the request, for an appeal within the agency of an initial adverse agency determination, and for whatever additional means may be necessary for each individual to be able to exercise fully his rights under [the Privacy Act]." 5 U.S.C. § 552a(f)(4).

Because of the competing goals of each statute (information access versus information protection and amendment), "each provides or limits access to material not opened or closed by the other." *Greentree v. United States Customs Serv.*, 674 F.2d 74, 78 (D.C. Cir. 1982).

Consequently, requesters seeking the broadest access to information about themselves make their requests pursuant to both statutes. To facilitate an individual's broad access to his files, Congress added a provision to the Privacy Act that specifies that an exemption under the FOIA is not a bar to release files under the Privacy Act and that a Privacy Act exemption is not to bar release of files under the FOIA. See 5 U.S.C. §552a(t). This provision of the Privacy Act, which was added in the 1984 amendments after the circuits were split as to whether an exemption under one statute is a bar to release under the other, yields the curious result that, even if the Privacy Act explicitly exempts an agency from having to disclose a record, if the record is available under the FOIA, the requester is entitled to it. *See Greentree*, 674 F.2d at 236 ("[T]he Privacy Act represents a Congressional mandate that the Privacy Act not be used as a barrier to FOIA access.").

II. *Failure to Exhaust Administrative Remedies*

A plaintiff must exhaust his administrative remedies under the Privacy Act before the court can exercise jurisdiction over his claim. *Larsen v. Hoffman*, 444 F. Supp. 245 (D.D.C. 1977). Similarly, under the FOIA, administrative remedies must be exhausted prior to judicial review. *Thomas v. Office of the United States Attorney*, 171 F.R.D. 53, 55 (E.D.N.Y. 1997). The purpose of the requirement is to allow the agency the opportunity to exercise its expertise and develop a record for review. *In re Steele*, 799 F.2d 461, 466 (9th Cir. 1986). Thus, when a person asks a court to compel an agency to produce documents before that person has made a formal request to the agency for those documents, the court will decline to act. *See id.*; *Sinito v. United States Dep't of Justice*, 176 F.3d 512, 516 (D.C. Cir. 1999); *Taylor v. Appleton*, 30 F.3d 1365, 1367-68 & n. 3 (11th Cir. 1994) (concluding that exhaustion, although not jurisdictional, is

"condition precedent" to filing suit).  Permitting a plaintiff to pursue judicial review without benefit of prior administrative consideration would undercut "the purposes of exhaustion, namely, 'preventing premature interference with agency processes, . . .  afford[ing] the parties and the courts the benefit of [the agency's] experience and expertise, . . . [and] compil[ing] a record which is adequate for judicial review.'"  *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) (alteration original)).

The Acts have slightly different positions when it comes to filing an action without having obtained a response from the relevant agency.  The FOIA requires agencies to respond to requests for documents within ten days, and to respond to appeals within twenty.  *See* 5 U.S.C. § 552(a)(6)(A).  If the agency fails to comply with these time limits, the person making the request "shall be deemed to have exhausted his administrative remedies."  *See* 5 U.S.C. § 552(a)(6)(c)).  Finally, under the FOIA, an interim response informing the plaintiff that the agency is in the process of addressing his request is adequate to satisfy the requirement that the agency reply within the statutory period.  *Sloman*, 832 F. Supp. at 66 (citing *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 610 (D.C. Cir. 1976)).

The Privacy Act, by contrast, does not allow for "constructive exhaustion," and prohibits a requester from filing an action without having obtained a response from the agency.  *See Davis v. United States*, 84 Fed. Appx. 97  (D.C. Cir. 2003) ("he failed to exhaust his administrative remedies, a prerequisite to filing a Privacy Act complaint in district court"); *Taylor v. United States Treasury Dep't*, 127 F.3d 470, 476-77 (5th Cir. 1997) (applying the "jurisprudential exhaustion doctrine" and dismissing plaintiff's suit against the IRS for failure to exhaust the IRS's non-statutory administrative procedure for Privacy Act requests); *Pollack v. Department of*

*Justice* 49 F.3d 115, 117 n.1 (4th Cir. 1995) ("In his request and subsequent enforcement action, Pollack also relied on the Privacy Act, 5 U.S.C. § 552a. . . . [T]he Privacy Act contains no equivalent to FOIA's 'constructive exhaustion' provision which, as we point out in this opinion, enabled the district court to review his FOIA request."); *Lane v. Department of Justice*, No. 02 Civ. 06555 (ENV), 2006 WL 1455459, at *6 (E.D.N.Y. May 22, 2006) ("the Privacy Act also requires a requester to exhaust his or her administrative remedies prior to commencing suit in federal court") (citing *Tota v. United States*, No. 99 Civ. 0445E (SC), 2000 WL 1160477, at *1 (W.D.N.Y. July 31, 2000)); *Schmidt v. United States Dep't of Defense*, No. 04 Civ. 1159 (WWE), 2005 WL 1606910, at *3 (D. Conn. July 7, 2005) ("jurisdictional provisions of the Privacy Act are inapplicable where a plaintiff has not exhausted available administrative remedies under the act"); *Hogan v. Huff*, No. 00 Civ. 6753(VM), 2002 WL 1359722, at *4 (S.D.N.Y. June 21, 2002).

Once the agency has responded to the request, the petitioner may no longer exercise his option to go to court immediately. Rather, the requester can seek judicial review only after he has unsuccessfully appealed to the head of the agency as to any denial and thereby exhausted his administrative remedies. Thus, if the agency responds to a FOIA request before the requester files suit, the ten-day constructive exhaustion provision in 5 U.S.C. § 552(a)(6)(C) no longer applies; actual exhaustion of administrative remedies is required. *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990); *Sloman*, 832 F. Supp. at 66.

As a preliminary matter, three of the requests can be considered quickly as the only arguments levied against them by the government is that they were never received. The government asserts that it never received the June 6, 2003 FOIA/PA request to the DOJ Criminal

Division (Counts 5-6); the May 31, 2003 FOIA/PA request to the FBI field office in Melville, New York (Counts 29-30); and the May 15, 2003 FOIA/PA request to the FBI field office in Tampa, Florida (Counts 35-36). (*See* Defs.' Summ. J. Mem. at 10; Defs.' 56.1 Statement ¶ 12, 30.)

With regard to the June 6 DOJ request, Plaintiff argues that "he verified that the USDOJ-CD did receive delivery" because he sent the request via Priority Mail with tracking. (*See* Pl.'s Opp'n Re: Counts I-VI at 5.) Plaintiff makes similar contentions with regard to the Melville and Tampa requests. (*See* Pl.'s Opp'n Re: Counts IX-LVI at 9.) Despite Plaintiff's assertions, he provides no evidence to support his case: he simply provides copies of receipts to confirm that the request was in fact mailed, but nothing to indicate that the requests were in fact received. Furthermore, he has provided no evidence of bad faith on the government that would undermine its assertion. Finally, even if the government had received the request, Plaintiff has not asserted any attempt on his part to exhausted his administrative remedies as to these requests. Accordingly, the Court grants Defendants' motion for summary judgment as to Counts 5-6, 29-30, and 35-36.

A. *Failure to Appeal*

The government also contends that Plaintiff failed to file appeals for a number of claims. Because the statutes have different approaches to the exhaustion requirement, the Court analyzes the FOIA claims and the Privacy Act claims separately.

1. *FOIA: Claims 7 (W.D.Penn.), 17, 21, 37, 39, 41, 51, 53, 69 (Atlanta), 71*

Pursuant to the FOIA, if an agency receives an individual's FOIA request, it has ten working days (or in "unusual circumstances" an agency may obtain 10 additional days) to notify

the requester of whether it will comply with the request.  *Fisher v. F.B.I*, 94 F. Supp. 2d 213, 217 (D. Conn. 2000).  Note, the response merely informs the requester whether the agency *will* comply; the agency is not required to fully comply within that ten-day time frame.   If the agency fails to respond within the statutory time limits, the requester is deemed to have exhausted his administrative remedies, and the requester has a right to sue the agency for civil remedies in federal court.  *Id*.  However, if the agency either complies or agrees to comply with the request, even if its reply is late or after litigation has begun, the requester's claim for relief under the FOIA is moot.  *See id*; *Grove v. CIA*, 752 F. Supp. 28 (D.C. Cir. 1990).  Alternatively, if a federal agency denies an individual's request, the requester must exhaust his administrative remedies within the agency before he can obtain the right to sue the agency.  *Kissinger*, 445 U.S. at 136.

A federal court may dismiss a lawsuit for failure to exhaust administrative remedies if the requester's initial request or method of submission was defective.  *Keese v. United States*, 632 F. Supp. 85, 86 (S.D. Tex. 1985).  A requester's request may be defective if it was overly broad in scope.  *Id*.  A request may also be defective if the requester submitted the request to an improper party.  *Tuchinsky v. Selective Serv. Sys.*, 418 F.2d 1155 (7th Cir. 1969).  Additionally, a request may be defective if the requester failed to include the verification of identity that the agency required.  *Lilienthal v. Parks*, 574 F. Supp. 14 (E.D. Ark. 1983).

Defendants assert that Plaintiff failed to exhaust his administrative remedies with respect to a number of his requests because he did not appeal the decisions.  (*See* Defs.' Summ. J. Mem. at 11.)   According to Defendants, Plaintiff did not file appeals to the following FOIA/PA requests, to which Defendants responded that their searched had uncovered no records: (1) EOUSA's response to Plaintiff's July 19, 2002 request for documents in the Western District of

Pennsylvania (Count 7); (2) the FBI's response to Plaintiff's April 27, 2003 request for documents in the FBI's Miami field office (Count 17); (3) the FBI's response to Plaintiff's April 27, 2003 request for documents in the FBI's Cleveland field office (Count 21); (4) the FBI's response to Plaintiff's April 27, 2003 request for documents in the FBI's Albany field office (Count 37); (5) the FBI's response to Plaintiff's April 27, 2003 request for documents in the FBI's Philadelphia field office (Count 39); (6) the FBI's response to Plaintiff's April 27, 2003 request for documents in the FBI's Las Vegas field office (Count 41); (7) the FBI's response to Plaintiff's April 27, 2003 request for documents in the FBI's El Paso field office (Count 51); (8) the FBI's response to Plaintiff's April 27, 2003 request for documents in the FBI's San Antonio field office (Count 53); (9) the IRS's response to Plaintiff's May 15, 2003 request for documents from the IRS's Atlanta campus (Count 69 (Atlanta)); and (10) the BOP's response to Plaintiff's request for copies of pages from the Community Correction Manual (Count 71).

Plaintiff does little to rebut these arguments. As to the EOUSA request, he simply replies, "the facts show that the searches were less than adequate," dodging the central question of whether he appealed the decision. (See Pl.'s Opp'n Re: Counts VII & VIII at 2.) In fact, Plaintiff admits that he did not appeal the decision, insisting that he never received the response because "[i]f he did receive it, he would have appealed . . . ." Accordingly, Count 7, as it relates to the Western District of Pennsylvania, is dismissed.

Plaintiff further admits that he "did not file appeals from the alleged determinations from the FBI's Albany, New York, Philadelphia, Pennsylvania, and San Antonio, Texas field offices." (Pl.'s Opp'n Re: Counts IX-LVI at 8.) Based upon this admission, Plaintiff has clearly not

exhausted his administrative remedies, and these claims must be dismissed. The Court thus grants Defendants' motion for summary judgment as to Counts 37, 39, and 53.

Plaintiff does dispute Defendants' arguments as to the letters to the Miami, Las Vegas, El Paso, and Cleveland field offices, arguing simply that he did file appeals, and citing his own declaration. (*See id.* at 8.) Even if an appeal had been filed, however, it is clear that no decision on that appeal was rendered. Again, Plaintiff prematurely sought the assistance of this Court without pursuing his requests diligently with the relevant agencies. Accordingly, the Court grants Defendants' motion as to Counts 17, 21, 41, and 51.

   2.   *Privacy Act: Counts 8 (W.D.Penn.),18, 22, 38, 40, 42, 52, 54, and 70 (Atlanta)*

The Privacy Act authorizes a requester to bring a civil action for civil remedies in federal district court against an agency that has allegedly violated the Privacy Act. *See* 5 U.S.C. § 552a(g)(1). Prior to bringing suit in federal court, however, a plaintiff seeking injunctive relief regarding the release of records must first exhaust his administrative remedies. *See Fisher v. F.B.I.*, 94 F. Supp. 2d 213, 216 (D. Conn. 2000) ("For plaintiff to obtain a civil remedy under the Privacy Act for a violation of his access rights, he must first exhaust administrative remedies."). Plaintiff failed to exhaust his administrative remedies with regard to the complimentary Privacy Act claims: 8 (W.D. Penn.), 18, 22, 38, 40, 42, 52, 54, and 70 (Atlanta).

   B.   *Request Has Not Been Fully Processed: Counts 9-16, 27-28, 31-34, 43-44, 47-50, 55-60*

Defendants then argue that a number of the requests must be dismissed because no decision has been rendered. When the action was filed, Defendants "had not issued an initial

decision" with respect to the a number of requests to various FBI offices, implicating Counts 9-10, 11-12, 13-14, 15-16, 27-28, 31-32, 33-34, 43-44, 47-48, 49-50, 55-56. The requests to the FBI Headquarters, Pittsburgh (2), New York, Dallas, Portland, Buffalo, Houston, Milwaukee, and Boston were still being processed when this suit was filed. (*See* Defs.' 56.1 Statement ¶¶ 29, 34, 38, 52, 56, 60, 70, 76, 80, 88, 93, 98.)

While this motion was pending, a number of documents were released to Plaintiff. Plaintiff disputes the adequacy of these releases. The parties expend considerable effort in briefing the adequacy of the responses to these requests in their supplemental memoranda. (*See* Pl.'s Suppl. Mem. at 5-14; Def.'s Suppl. Mem. at 6-16.) What cannot be ignored, however, is the fact that the disputed materials were released to Plaintiff after the present suit was commenced. Furthermore, the government indicates that it is still processing some of the requests. (*See* Def.'s Supplemental Reply Mem. at 4 ("the FBI will release to Plaintiff any documents created between December 31, 2002 and May 14, 2003 that were located during a more recent search conducted in yet another FOIA case seeking 'No-Fly' list materials").

As previously noted, "permitting a plaintiff to pursue judicial review without benefit of prior administrative consideration would undercut "the purposes of exhaustion, namely, 'preventing premature interference with agency processes, . . . afford[ing] the parties and the courts the benefit of [the agency's] experience and expertise, . . . [and] compil[ing] a record which is adequate for judicial review.'" *Ryan*, 12 F.3d at 247. Thus, the fact that these requests are still being processed, and have not been appealed internally, merits dismissal for nonexhaustion. Accordingly, Counts 9-16, 27-28, 31-34, 43-44, 47-50, and 55-56 are dismissed.

Additionally, though Defendants' failed to raise this argument, it is clear that Plaintiff similarly failed to exhaust his administrative remedies with respect to Counts 57-58 and 59-60, *i.e.*, his letter requests to the DOT. On January 24, 2004, approximately six months after Plaintiff filed this suit, Defendants directed Plaintiff to clarify these requests, and Plaintiff subsequently submitted the requested clarifications. It is clear from these facts that these requests are still being processed and any claims based upon these requests are premature. *Fisher*, 94 F. Supp. 2d at 217; *Grove*, 752 F. Supp. 28. Accordingly, the Court dismisses Counts 57-58 and 59-60. *See, e.g.*, *Robert v. Dep't of Justice*, 2006 WL 960913, at *1 (2d Cir. 2006) ("requesters are required to exhaust this administrative remedy *before* turning to litigation") (emphasis added).

C.      *Premature Claims: Counts 65-66*

The request to the USPS was received on July 2, 2003, though it was dated May 7 and postmarked June 19. (Decl. of Gary D. Hyde, Jr., dated April 12, 2004 ("Hyde Decl.") ¶ 5.) Defendants acknowledged receipt of the request on July 14, 2003, informing Plaintiff that his requests were being processed but that there would be a delay because the USPS processes requests on a "first-in first-out basis." (*See id.*, Ex. D.) Plaintiff filed suit on July 23, 2003, just fourteen days after the request was initially received. (*Id.* ¶ 6.) Defendants response was adequate, however, to satisfy their statutory obligations at that juncture. *See Sloman*, 832 F. Supp. at 66. Thus, Plaintiff filed suit before the USPS was required to respond. Accordingly, Counts 65-66 are dismissed.

III.      *Inadequate Requests: Counts 63-64 (Items 6 and 7) and 69-70 (Andover, Fresno, Brookhaven, and Philadelphia Requests)*

A number of the requests were rejected by the agencies because they were over broad or vague. An agency's obligation to process a request for records is predicated on the agency's receipt of a request which reasonably describes the records sought and is made in accordance with published rules stating the time, place, fees, and procedures to be followed. *Giaimo v. I.R.S.*, 1996 WL 249362, at *2 (E.D. Mo. Feb. 23, 1996) (citing 5 U.S.C. § 552(a)(3)). The FOIA requires a requestor to submit to the appropriate agency a reasonably specific demand for information that complies with the agency's published rules. 5 U.S.C. § 552(a)(3); *see Robert v. Dep't of Justice*, 2001 WL 34077473, at *7 (E.D.N.Y. ).

Defendants argue that several requests did not describe the documents requested with requisite detail, thereby defeating Plaintiff's claims. According to Defendants, Items 6 and 7 of the June 1, 2003 request to the TSA (portions of Counts 63-64) did not comply with 6 C.F.R. § 5.3(b) and the May 15, 2003 requests to IRS offices in Brookhaven, and Philadelphia (portions of Counts 69-70) did not comply with the requirements of 26 C.F.R. § 601.702(c)(1)(I).[1]

Items 6 and 7 of the June 1, 2003 request to the TSA, Plaintiff asked the TSA to search "any database maintained or accessible by the TSA" and requested a "list of all persons and agencies that accessed my name in the above referenced databases." (Decl. of Patricia M. Riep-Dice, dated April 9, 2004 ("Riep-Dice Decl."), Ex. D.) According to the TSA, these requests

---

[1] The IRS requests to the Andover and Fresno offices indicate that there was an ongoing dialogue between Plaintiff and Defendants regarding the adequacy of his requests in the months after he filed suit. (*See* Defs.' 56.1 Statement ¶¶ 155-157, 164.) Though he disputes the Fresno and Andover offices' assertion that his requests were inadequate (*see* Pl.'s Opp'n Re: Counts LXIX through LXX at 4), Plaintiff does not address the fact that the requests were still being processed. Because the requests had not been fully processed at the time that Plaintiff filed suit, he clearly had not exhausted his administrative remedies. Accordingly, Count 69, as it pertains to the Andover and Fresno IRS offices, is dismissed.

were insufficiently detailed, so that the TSA could not locate the requested documents. (*See id.*, Ex. F, at 2.) This determination is consistent with the pertinent federal regulation, which advises requesters that "[w]henever possible, your request should include specific information about each record sought, such as the date, title or name, author, recipient, and subject matter of the record." 6 C.F.R. § 5.3(b). Plaintiff's vague requests failed to provide any of the information needed to conduct an adequate search. Thus, the TSA appropriately denied the request. Accordingly, the Court grants Defendants' motion as to Items 6 and 7 of the June 1, 2003 TSA requests.

Defendants argue that the May 15, 2003 requests to IRS offices in Brookhaven, and Philadelphia (portions of Counts 69-70) did not comply with the requirements of 26 C.F.R. § 601.702(c)(1)(I). Those requests must "reasonably describe[]" the records requested. "Reasonably describe" means:

> the requirement shall generally be satisfied if the requester gives the name, taxpayer identification number (e.g., social security number or employer identification number), subject matter, location, and years at issue, of the requested records. If the request seeks records pertaining to pending litigation, the request shall indicate the title of the case, the court in which the case was filed, and the nature of the case. It is suggested that the person making the request furnish any additional information which shall more clearly identify the requested records.

26 C.F.R. § 601.702(c)(5)(I). Plaintiff's request states, "I request all records . . . that pertain to me, mention me, relate to me, or otherwise discuss me," and then lists the ten locations where he desires the searches to occur. (*See* Decl. of Peggy M. Leib, dated March 24, 2004, Ex. A.) It included his social security number and date or birth. This request did not contained any details, however, about the subject matter of the request, nor the years at issue. Instead, it describes the documents in the most cursory terms, *i.e.*, those somehow involving Plaintiff. Accordingly,

Plaintiff's claims as to Counts 69-70 are dismissed with regard to the Andover, Fresno, Brookhaven, and Philadelphia requests..

IV.     *Adequacy of Responses*

Finally, Defendants move for summary judgment on the remaining twenty counts (and portions of nine others) on the ground that their responses were adequate: they either found no documents, all responsive documents were released, or the unreleased responsive documents were rightfully withheld pursuant to statutory exemptions.  (*See* Def.'s Mem. at 15-40).  Plaintiff opposes each of these arguments.

Defendants only address the adequacy of their searches pursuant to the FOIA.  Their arguments in support of summary judgment make no mention of the Privacy Act or its provisions.  However, Plaintiff treats the Defendants arguments regarding the adequacy of the searches as addressing both the Privacy Act and FOIA, and the Court will do the same.  Such an approach appears to be consistent with the case law, which, when addressing FOIA/PA requests, applies the "adequacy of search" analysis from the FOIA to both statutes.  *See Shores v. F.B.I.*, 185 F. Supp. 2d 77,  82 (D.D.C. 2002); *cf. Sneed v. United States Dep't of Labor*, 14 Fed. Appx. 343, 345 (6th Cir. 2001).

Federal courts' jurisdiction over FOIA claims "is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'"  *Kissinger*, 445 U.S. at 151.  If a requester challenges an agency's response, the agency bears the burden to prove that its response was appropriate.  Specifically, the agency must show that it undertook an adequate search in response to the request, and that the documents it withheld were exempt from disclosure.  *See Kissinger*, 445 F.3d at 478.  An agency may meet these burdens by submitting a reasonably

specific affidavit of the employee responsible for the search that indicates that the agency undertook an adequate search and failed to recover documents or that the documents it did recover were exempt under FOIA. *See Katzman v. CIA*, 903 F. Supp. 434, 437 (E.D.N.Y. 1995). A "search is adequate if it is 'reasonably calculated to discover the requested documents.'" *Id.* "The crucial issue is not whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents." *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993) (internal quotation omitted)

The agency is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents." *Garcia v. United States Dep't of Justice*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002) (internal quotation marks and citations omitted). Courts accord a presumption of good faith to detailed, *i.e.*, non-conclusory, agency affidavits. *Katzman*, 903 F. Supp. at 437. If, however, an agency's affidavits are conclusory or not "relatively detailed," they are inadequate. *Id.* In order to avoid a court's award of summary judgment to an agency based on the agency's adequate affidavits, a requester must show the agency's bad faith. *Tota v. F.B.I.*, 2000 U.S. Dist. LEXIS 11646, (W.D.N.Y. 2000). Specifically, the requester must present "specific facts showing that documents exist that were not released by the agency." *Id.*

    A.    *No Records Found: Counts 1-2, 7-8 (EDNY), 19-20, 23-24, 25-26, 45-46, 51-52, 53-54, and 63-64 (Items 1-5)*

Defendants contend that with regard to a number of requests, no documents were located. (*See* Defs.' Mem. at 17-19.) Those requests include: (1) the December 18, 2002 DOJ-Criminal Division of the Eastern District of New York request for information (Counts 1-2); (2) the

requests to the FBI Field Office in the District of Columbia (Counts 19-20), Phoenix (Counts 23-24), Newark (Counts 25-26), and Cincinnati (Counts 45-46); and (3) the June 1, 2003 request to the TSA (Counts 63-64). Plaintiff disputes these assertions.

In order to demonstrate adequacy of its search, the defendant must submit a reasonably detailed affidavit, "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched" so as to give the requesting party an opportunity to challenge the adequacy of the search. *Oglesby*, 920 F.2d at 68; *see also The Nation Magazine v. United States Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995) (affidavits regarding the adequacy of the agency's search must set forth the terms searched)).

Preliminarily, Plaintiff often argues the query *results* themselves should have been part of his file. Plaintiff does not cite to any authority for his position. For example, regarding the December 18, 2002 DOJ-Criminal Division request, Plaintiff argues that the Criminal Division searched several databases and "the query results themselves constituted records containing Sussman's name," and, as such, "they should have been provided to Sussman." (Pl.'s Opp'n Re: Counts I through IV at 2.) Apparently, Plaintiff argues that, as a result of performing searches for Plaintiff's requested documents, Defendants would have created a "query result," and that "query result" would have become part of his file. (*See* Pl.'s Suppl. Mem. at 2 ("the 'no records' response itself constitute an agency record bearing his name").)

As Defendants point out, they "were required to produce only agency records existing at the time the search was conducted (which they did), and were not required to create records." (*See* Def.'s Supplemental Mem. at 5.) *See N.L.R.B. v. Sears, Roebuck, & Co.*, 421 U.S. 132,

161-62 (1974) (holding that the FOIA "only requires disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create"). Thus, the Court will not address this argument as to any particular claim. Nonetheless, there are a number of other arguments regarding the particular claims that must be discussed individually.

### 1. Counts 1-2

Counts 1-2 involved a FOIA/PA request, dated December 18, 2002, for documents relating to Plaintiff in eleven different locales. (*See* Decl. of Joseph S. Beck ("Beck Decl."), dated Feb. 24, 2004, Ex. 3.) Plaintiff detailed the databases he wanted searched. Defendants responded to the request on April 22, 2003, indicating that the only records that they could find were prior FOIA/PA requests submitted by Plaintiff. (*See* Def.'s 56.1 Statement ¶ 6.) The Beck Declaration details the databases that were searched, and declared that Beck had "personally reviewed all of the original, signed search responses in this case, and ha[d] verified that no records responsive to plaintiff's request were located." (*See* Beck Decl. ¶ 19.)

Plaintiff has not argued that there was any bad faith on the part of the government. Furthermore, the Court's own review of the declaration indicates that the government acted in good faith to comply with the request. The requested databases were searched, save one, but the government adequately explained that searching that database would have been fruitless as it only contains records about past and present personnel and Plaintiff was neither. (*See id.* ¶ 15.) Accordingly, the Court finds that government acted in good faith and grants Defendants motion for summary judgment as to Counts 1-2.

### 2. Counts 7-8 (EDNY)

Counts 7-8 involved FOIA/PA requests to the Executive Offices of the United States

Attorney ("EOUSA"), but only the request regarding the Eastern District of New York is relevant

here. Defendants responded to the request on November 26, 2003, indicating that they had found

no records. (*See* Decl. of Mary Beth Uitti ("Uitti Decl."), dated April 6, 2004, Ex. C.) The

response to Plaintiff indicated that the United States Attorney's Offices typically only have

records regarding a person who was "indicted or prosecuted in their district." (*See id.*)

Plaintiff suggests that the government's search was not conducted in good faith, but his

argument is based solely on Plaintiff's personal certainty that the EOUSA has in its possession

documents that pertain to Plaintiff. (*See* Pl.'s Opp'n Re: Counts VII and VIII at 4.)   The Court's

review of the declaration indicates that the government acted in good faith to comply with the

request. Defendants searched a number of databases, and conducted a second search based upon

assertions in Plaintiff's appeal. (*See id.* ¶¶ 10-11.)   Plaintiff must remember that "[t]he crucial

issue is not whether relevant documents might exist, but whether the agency's search was

reasonably calculated to discover the requested documents." *Maynard*, 986 F.2d at 559.

Plaintiff has not suggested any flaws in the methodology beyond his displeasure with the result.

Such an argument does not defeat the presumption of good faith. Accordingly, the Court grants

Defendants motion regarding Counts 7-8.

> 3. *Counts 19-20, 23-24, 25-26, 45-46, 51-52, and 53-54*

Defendants move for summary judgment as to the twelve counts directed at FOIA/PA

requests sent to various FBI field offices. Counts 19-20 involve a FOIA/PA request to the

Washington D.C. Field Office; 23-24 involve a request to the Phoenix Field Office; 25-26

involve a request to the Newark Field Office; 45-46 involve a request to the Cincinnati Field

Office; 51-52 involve a request to the El Paso Field Office; and 53-54 involve a request to the San Antonio Field Office. The FBI asserts that it conducted adequate searches and found no responsive documents. (*See* Decl. of David M. Hardy ("Hardy Decl."), dated April 8, 2004, at ¶ 5.) Despite providing four declarations by David M. Hardy, "Section Chief of the Record/Information Dissemination Section, Records Management Division, at Federal Bureau of Investigation Headquarters in Washington D.C." (Hardy Decl. ¶ 1), the government failed to detail how these searches were conducted. It merely states that no records were found, but does not indicate the search methods, the query terms, or anything specific about those searches. Hardy merely states in conclusory fashion that "[s]earches conducted by these field offices failed to locate main files responsive to [Plaintiff's] FOIA requests." (*Id.* ¶ 5.)

Thus, the Court denies Defendants' motion as to Counts 19, 23, 25, 45, 51, and 53 because they have failed to adequately indicate the rigors of their search. Such a failure does not establish an absence of good faith, however, so the Court similarly denies Plaintiff's motion for summary judgment as to those counts. Instead, Defendants must submit to the Court a reasonably detailed affidavit indicating the search terms for those counts.

Additionally, Section 552a(j)(2) of the Privacy Act exempts from disclosure systems of records that are "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws." Defendants move to dismiss the Privacy Act claims pertaining to the FBI because records concerning plaintiff would be "exempt under section (j)(2) of the Privacy Act." (*See* Third Hardy Decl. at ¶ 13; *see also* Defs.' Supplemental Mem. at 3.) Plaintiff counters that § 552a(j)(2) "only applies to records that have been compiled for one of the law enforcement purposes specifically listed in 5 U.S.C. §

552a(j)(2)(A)-(C)." (*See* Pl.'s Supplemental Mem. at 1 (citing *Holz v. Westphal*, 217 F. Supp. 2d 50, 54-56 (D.D.C. 2002)).)

Plaintiff has the better of this argument. As the court wrote in *Holz*, "[a]n agency's right to invoke the exemption involving criminal investigation records . . . is not absolute." 217 F. Supp. 2d at 54. In order to qualify for the exemption, a record must satisfy two criteria. *See Doe v. FBI*, 936 F.2d 1346, 1353 (D.C. Cir. 1991); *Holz*, 217 F. Supp. 2d at 55. "First, 'the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security.'" *Id.* (quoting *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982)). To make this showing, the agency "must demonstrate a connection between its investigation and the existence of a 'possible security risk or violation of federal law.'" *Id.* (quoting *Pratt*, 673 F.2d at 420). "Second, 'the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Id.* (quoting *Pratt*, 673 F.2d at 421). In applying this second requirement, "a reviewing court 'should be hesitant to second-guess a law enforcement agency's decision to investigate if there is a plausible basis for its decision.'" *Id.* at 1353-54 (quoting *Pratt*, 673 F.2d at 421); *Holz*, 217 F. Supp. 2d at 55.

As to the Counts 20, 24, 26, 46, 52, and 54, the FBI has provided no basis for its failure to disclose the requested documents beyond the general claim that, as a law enforcement agency, it is exempt. No such general exemption exists in the Privacy Act. As a result of this misinterpretation of the Privacy Act, the FBI admitted that it "referred only to the FOIA in relation to the processing of the information pertaining to Plaintiff," (Third Hardy Decl. at ¶ 16). As such, the FBI admits that it failed to perform its duty under the Privacy Act. (*See* Def.'s

Reply Mem. at 20; Def.'s Supplemental Mem. at 4.) As noted earlier, though the FOIA and Privacy Act substantially overlap, the two statues are not "completely coextensive; each provides or limits access to material not opened or closed by the other." *Greentree*, 674 F.2d at 78. If the only basis for withholding a record under one statute is the other the exemption does not apply and the record must be released. *See* 5 U.S.C. § 552a(a)(t). Thus, processing Plaintiff's request pursuant only to the FOIA is not adequate to comply with Plaintiff's request. Accordingly, the Court grants Plaintiff's motion for summary judgment as to Counts 20, 24, 26, 46, 52, and 54. The Court directs Defendants to perform the searches pursuant to the Privacy Act, and produce such documents that satisfy Plaintiff's request and which are not exempt.

      5.    *Counts 63-64 (Items 1-5)*

Finally, Defendants contend that they did not locate any responsive documents to items one through five of Plaintiff's second TSA request. In those items, Plaintiff requested results from searches of five different databases: "Capps," "Total Information Awareness," "Terrorism and Intelligence Data Information Sharing Data Mart," "Violent Gang and Terrorism Organization File," and "Rissnet." TSA responded by indicating that Capps I does not contain information regarding individuals, Capps II is not operational, and that it does not maintain the other four databases. (*See* Riep-Dice Decl. ¶ 137.) Plaintiff "will not dispute [these] contentions." (*See* Pl.'s Opp'n Re: Counts LXI through LXIV at 5.) Accordingly, the Court grants Defendants motion to dismiss Counts 63-64 as it pertains to Items 1-5.

     *B.*    *All Records Released*

      1.    *Counts 3-4*

With regard to Counts 3-4, Defendants assert that they released all responsive documents. This request involved a May 1, 2003 letter requesting seven categories of documents relating to watch lists. In response to his letter, the government replied that it had "identified a document that might be responsive to Plaintiff's FOIA request for information about 'watchlists,' and send him a copy of it." (*See* Def.'s 56.1 Statement ¶ 11.)

Plaintiff has not argued that there was any bad faith on the part of the government. He simply argues that the DOJ "should have searched all of its areas, not just the components it listed." (Pl.'s Opp'n Re: Counts I through VI at 4.) Plaintiff does not indicate what "areas" those are, however, nor why the DOJ's failure to search those "areas" is an indication of bad faith. Furthermore, the Court's own review of the declaration indicates that the government acted in good faith to comply with the request. The DOJ indicates which databases it searched, and indicates that it did locate one file that was responsive to Plaintiff's request. (*See* Beck Decl. ¶¶ 16-17.) Accordingly, the Court finds that government acted in good faith and grants Defendants motion for summary judgment as to Counts Three and Four.

### 2. Counts 67-68

With regard to Counts 67 and 68, the government moves for summary judgment on the ground that it released all non-exempt documents and the other documents were properly withheld pursuant to 5 U.S.C. § 552(b)(2), (b)(7)(C) and (b)(7)(E). Plaintiff first argues that the USSS's search was inadequate. He then argues that each of the exemptions invoked should not apply. Because the inadequacy of the search is sufficient to deny the government's motion, the Court only considers that issue.

Defendants searched the Master Central Index ("MCI") for filed "indexed under plaintiff's name." (*See* Decl. of Kathy J. Lyerly ("Lyerly Decl."), dated April 12, 2004, ¶ 9.) This search produced one criminal investigative file. As Plaintiff points out, however, it is unclear how the USSS search complied, in good faith, with Plaintiff's request. Plaintiff's requested "all documents that pertain to me, mention me, discuss me, or otherwise list my name," and indicated that the search should be conducted at the following offices: Western District of Pennsylvania, Souther District of New York, Eastern District of New York, and USSS Headquarters. (*See id.*, Ex. 1.)

The USSS did not contend that the request was flawed or lacking in any way. Instead, they argued that they had complied with the request. However, there is nothing in the affidavit to explain that a search of the MCI satisfies a request to search all of the offices listed; that a search of the MCI would indicate any documents held in any offices by the USSS; nor that a search of those offices is unnecessary or unfeasible. As a result, the affidavit is not sufficiently detailed for the Court to conclude that the USSS acted in good faith. Accordingly, the Court denies Defendants' motion for summary judgment as to Counts 61 and 62 without prejudice should Defendants be able to articulate why a search of the MCI would entirely satisfy Plaintiff's request. Until that time, the Court similarly denies Plaintiff's counter-motion.

### 3. Count 71

On March 25, 2001, the BOP received a FOIA request from Plaintiff in which he requested pages 187 through 275 of the *Community Corrections Manual*, and a copy of the agreement between Renewal, Inc. and the BOP with respect to "all aspects of their being a contract facility." (*See* Decl. of Donald K. Hawkins ("Hawkins Decl."), dated March 26, 2004,

Ex. A.)  Plaintiff did not appeal the response to the *Community Corrections Manual* request, so it was dismissed for failure to exhaust administrative remedies.  *See, supra*, Part II.A.1.  He did appeal, however, the BOP's response to the Renewal Contract request, so that request is properly before this Court.

Defendants obtained the contract, but Plaintiff first argues that the search was inadequate. (*See* Pl.'s Opp'n Re: Count LXXI at 1-2.)  The government only addresses whether the redactions from that contract were proper.  As Plaintiff points out, however, the Court cannot assess whether the redactions were proper if the adequacy of the search is at issue.  Here, the contract provided to the Court is only five of nine pages.  The government offers no explanation for the fact that four pages are missing.  It also appears that Plaintiff received no explanation for the fact that a number of pages were not provided to him.  (*See id.* at 1.)  That being the case, the Court cannot determine whether Defendants effort was in good faith, let alone determine whether the exemptions were properly applied.  Accordingly, the Court denies Defendants' motion for summary judgment as to Count 71.

C.      *Redacted*

Finally, the government moves for summary judgment as to Counts 61 and 62 on the grounds that its withholding of certain documents was proper as those documents were exempted from release.  Congress recognized that it must limit individuals' access to federal agency records so as to avoid disruptions in the government's daily business.  *Kissinger*, 445 U.S. at 136.  Accordingly, Congress exempted agencies from having to produce certain documents.  *Id.* In congruence with its philosophy of full agency disclosure, Congress advised courts to narrowly construe these exemptions and to resolve doubts in favor of disclosure.  *Id.*

In drafting the Privacy Act, Congress recognized the need to limit individual's access to their records. Accordingly, the Privacy Act contains two general exemptions and seven specific exemptions. 5 U.S.C. § 552a(j)(1), (2); 5 U.S.C. § 552a(k)(1)-(7). The Privacy Act generally exempts the Central Intelligence Agency from having to disclose the records it maintains within its systems of records. 5 U.S.C. § 552a(j)(1). The Privacy Act also generally exempts agencies that principally function as criminal law enforcement agencies from having to disclose the documents they maintain within their systems of records. 5 U.S.C. § 552a(j)(2). Additionally, the Privacy Act, 5 U.S.C. § 552a(k) lists seven specific exemptions.

The government raises arguments in favor of its redactions that referred to both acts, though the government's analysis only applied the law of the FOIA. Plaintiff followed the same analytical practice. Thus, the Court, in performing its own analysis, only considers the analytical framework of the FOIA, but considers the outcome under the FOIA as determining both the FOIA and corresponding Privacy Act claim.

Counts 61-62 are based upon a FOIA/PA request dated May 1, 2003, for seven categories of documents relating to "watch lists." The TSA determined that it could "neither confirm nor deny the existence of records responsive to Items 1 and 2 or Item 5 to the extent that it seeks records relating to individuals named on a watch list because it is sensitive security information." (Def.'s 56.1 Statement ¶ 125.) The TSA then identified 201 pages of records that were responsive to Items 3, 4, 6 and 7. (*Id.* ¶ 127.) Of those 201 pages of records, the TSA redacted "sensitive security information" pursuant to 49 U.S.C. § 114(s), 5 U.S.C. § 552(b)(2), (3), (5), (6) and 5 U.S.C. § 552a(j)(2), (k)(1), k(2).

Plaintiff expressly waived any objections to documents redacted pursuant to § 552(b)(2) and (3) and implicitly waived any objection to the application of § 552(b)(6). (*See* Pl.'s Opp'n Re: Counts LXI through LXIV at 4 ("although he believes that the TSA capriciously applied Exemptions (b)(2) and (b)(3) . . . Sussman consents to the principles set forth by the TSA); *id.* ("without the need to litigate the merits of the TSA's application of exemption (b)(6), Sussman consents that all names, addresses, and identifiers of individuals (including TSA employees) may be redacted").) Therefore, the Court only consider Plaintiff's objection to the application of Exemption (b)(5) ("Exemption 5").

The TSA withheld two documents in full and redacted portions of thirteen others pursuant to the exemption from disclosure of deliberative process information provided for in Exemption 5. (*See* Def.'s 56.1 Statement ¶ 132.) Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Properly construed, it calls for "disclosure of all 'opinions and interpretations' which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.'" *Sears, Roebuck & Co.,* 421 U.S. at 153 (quoting Davis, The Information Act: A Preliminary Analysis, 34 U. Chi. L. Rev. 761, 797 (1967)).

With respect to the two documents withheld in full, "this court has an 'affirmative duty' to consider whether non-exempt information could have been segregated from exempt information and released." *Maydak v. United States Dep't of Justice,* 254 F. Supp. 2d 23, 39 (D.D.C. 2003) (citing *Trans-Pacific Policing Agreement v. United States Customs Service,* 177

-30-

F.3d 1022, 1027 (D.C. Cir. 1999) (internal citations omitted).  Entire records are exempt from disclosure when it is shown that "the exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value."  *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (quoting *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981)); *Maydak*, 254 F. Supp. 2d at 40. Necessary to this showing is "a relatively detailed description" of the withheld documents.  *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C .Cir. 1993) (citation omitted).

Defendants have provided such "relatively detailed descriptions."  The first withheld document is a "draft of a response to a Congressional inquiry regarding the implementation of 49 U.S.C. § 114(h)," and the second is "Draft Policy No. 7 – Proposed Policy, Transportation Security Administration (TSA) Air Traveller [*sic*] Watch lists," which is another draft "policy proposal for implementing 49 U.S.C. § 114(h)."  (Def.'s Mem. at 34.)

Plaintiff complains, however, that these descriptions "do not answer the threshold question: 'Were the deliberations adopted or not?'" (Pl.'s Opp'n Re: Counts LXI through LXIV at 5.)   As the Second Circuit has noted, "[j]ust because a document satisfies these requirements . . . does not mean that the deliberative process privilege bars its disclosure.  An agency may be required to disclose a document otherwise entitled to protection under the deliberative process privilege if the agency has chosen 'expressly to adopt or incorporate by reference [a] . . . memorandum previously covered by Exemption 5 in what would otherwise be a final opinion.'" *National Council of La Raza v. Department of Justice*, 411 F.3d 350, 356 (2d Cir. 2005) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 161).  "In such a circumstance, the document loses its

predecisional and deliberative character, and accordingly, the deliberative process privilege no longer applies." *La Raza*, 411 F.3d at 356; *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) ("[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public.").

The government has not addressed whether these admittedly predecisional and deliberative drafts regarding policy implementation were ever officially adopted. The government has merely stated that the documents were deliberative, but that is not adequate. *See La Raza*, 411 F.3d at 358; *Taxation With Representation Fund v. IRS*, 646 F.2d 666, 678 (D.C. Cir. 1981) (noting that deliberative process privilege may evaporate if a document "is used by the agency in its dealings with the public") (quoting *Coastal States Gas*, 617 F.2d at 866)); *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 70 (D.C. Cir. 1974) (explaining that disclosure is required "where a decision-maker has referred to an intra-agency memorandum as a basis for his decision," since "once adopted as a rationale for a decision, the memorandum becomes part of the public record"). Accordingly, the Government's motion to for summary judgment as to claims 61 and 62 is denied. The Court directs the TSA to provide the redacted documents for *in camera* review. *See Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 n.2 (2d Cir. 1999) ("it is the well settled practice of this Court to conduct in camera review of contested documents in a FOIA dispute"); *cf. Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973) (ordering more detailed affidavit for court inspection, where affidavit provided "did not illuminate or reveal the contents of the information sought, but rather set forth in conclusory terms" opinion that documents sought were covered under FOIA exemptions).

*CONCLUSION*

In sum, the Court grants Defendants' motion for summary judgment as to Counts 5-18, 21-22, 27-44, 47-60, 65-66, 69-70 (Atlanta), and 71 (Community Corrections Manual) for failure to exhaust administrative remedies. The Court grants Defendants' motion as to Counts 63-64 (Items 6 and 7) and 69-70 (Andover, Fresno, Brookhaven, and Philadelphia requests) because the requests were inadequately phrased. The Court grants Defendants' motion as to Counts 1-2, 3-4, 7-8 (Eastern District of New York), and 63-64 (Items 1 through 5) because the search was performed in good faith. The Courts grants Plaintiff's motion for summary judgment as to Counts 19-20, 23-26, 45-46, and 51-54 because the searches were either not performed in good faith or they were not performed at all. As to those claims, the government is directed to perform the necessary searches and release all responsive, non-exempt documents within the next 45 days or, if that is not possible, to provide Plaintiff and the Court with evidence of the government's good faith effort to comply with this directive. Finally, the Court denies both parties' motions as to Counts 61-62 and 71 (Renewal Contract) on the grounds that the evidence currently before the Court is inadequate for the Court to make a final determination.

**SO ORDERED.**

Dated:      Central Islip, New York               /s/
           September 30, 2006            Denis R. Hurley
                                      United States Senior District Judge