UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MICHAEL SUSSMAN,

                              Plaintiff,        **MEMORANDUM & ORDER**
  -against-                                       03 Civ. 3618 (DRH) (ETB)

UNITED STATES DEPARTMENT OF
JUSTICE; UNITED STATES DEPARTMENT
OF TRANSPORTATION;
TRANSPORTATION SECURITY
ADMINISTRATION; UNITED STATES
POSTAL SERVICE; UNITED STATES
SECRET SERVICE; INTERNAL
REVENUE SERVICE,
                              Defendants.
-------------------------------------------------------------X

**APPEARANCES:**

**MICHAEL SUSSMAN**
Plaintiff Pro Se
613 Cross Street
East McKeesport, PA 15035

**BENTON J. CAMPBELL**
**UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF NEW YORK**
Attorneys for Defendants
One Pierrepont Plaza
Brooklyn, NY 11201
By: Kathleen A. Mahoney, Esq.

**HURLEY, Senior District Judge**

### Introduction

This case arises out of Freedom of Information Act ("FOIA") and Privacy Act ("PA") requests made by Plaintiff Michael Sussman ("Plaintiff") upon various federal agencies (collectively, "government" or "Defendants") for all investigative and collection records pertaining to or naming him. In his complaint, Plaintiff asserted seventy-one (71) different

claims for relief. Both parties had previously moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. In a Memorandum and Order dated September 30, 2006 ("First Order"),[1] familiarity with which is presumed, the Court granted in part and denied in part Plaintiff's motion and granted in part and denied in part Defendants' motion. As a result of the First Order, sixteen (16) claims were left unresolved.

As to Counts 19-20, 23-26, 45-46, and 51-54 (collectively the "FBI Counts"), all of which pertain to information requests sent to various Federal Bureau of Investigation ("FBI") field offices, this Court granted Plaintiff's motion for summary judgment and denied Defendants' motion for summary judgment. The Court found that searches for the requested information were either not performed in good faith or not performed at all. The Court ordered the government to perform the necessary searches and release all responsive, non-exempt documents, or, if that is not possible, to provide Plaintiff and the Court with evidence of the government's good faith effort to comply with the First Order.

The Court denied both parties' motions for summary judgment as to Counts 61-62 (the "TSA Counts"), both of which pertain to the release of documents relating to how the Transportation Security Administration ("TSA") compiles its "no fly" and "selectee" watchlists. This Court was unable to determine whether certain draft documents were properly withheld from release, and it ordered an *in camera* review of the documents at issue.

The Court also denied both parties' motions for summary judgment as to Counts 67-68 (the "USSS Counts"). These counts pertain to information requests sent to the United States Secret Service ("USSS"). The Court was unable to determine whether the search process

---

[1] *See Sussman v. U. S. Dep't of Justice*, 2006 WL 2850608 (E.D.N.Y. Sept. 30, 2006).

implemented by the government was sufficient, and it ordered the government to submit a reasonably detailed affidavit articulating why its search process was adequate.

Finally, as to Count 71 (the "BOP Count"), in so far as it pertained to the release of an agreement between the Federal Bureau of Prisons ("BOP") and Renewal, Inc., a community corrections center (hereafter, the agreement shall be referred to as the "Renewal Contract"), the Court denied both parties' motions for summary judgment. The Court was unable to determine whether the search for the documents was conducted in good faith or whether the government properly withheld certain pages of the Renewal Contract.

Defendants now renew their motion for summary judgment on the FBI Counts, the TSA Counts and the USSS Counts. For the reasons set forth below, the motion is granted in part and denied in part.

## Discussion

**I. Standard**

In FOIA/PA cases, summary judgment is recognized as the primary mechanism by which a district court will resolve the issues presented. *See Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified."). A moving party is entitled to summary judgment if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To prevail at the summary judgment stage in a FOIA/PA case, a defending agency must demonstrate that its search for the requested material was adequate and that any withheld material is exempt from disclosure. *See Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d

Cir. 1994).

**II. The FBI Counts (19-20, 23-26, 45-46, and 51-54)**

Defendants have renewed their summary judgment motion as to the twelve counts directed at FOIA and PA requests sent to various FBI field offices. Counts 19-20 involve a request to the District of Columbia Field Office; 23-24 involve a request to the Phoenix, Arizona Field Office; 25-26 involve a request to the Newark, New Jersey Field Office; 45-46 involve a request to the Cincinnati, Ohio Field Office; 51-52 involve a request to the El Paso, Texas Field Office; and 53-54 involve a request to the San Antonio, Texas Field Office. *See* Decl. of David M. Hardy, dated April 8, 2004, ¶ 5.) The Court initially denied Defendants' motion for summary judgment because the government failed to detail how the requested searches were conducted, and ordered Defendants to submit a reasonably detailed affidavit indicating the search terms for these counts.

By letter dated November 13, 2006, Defendants submitted the Fifth Declaration of David M. Hardy, dated November 13, 2006, which provides further details regarding the search for the requested documents. In that letter, Defendant also made a renewed request for summary judgment dismissing the remaining counts against the FBI. By letter dated July 23, 2007, Plaintiff notified the Court that he was withdrawing his claims in Counts 19-20, 23-26, 45-46, and 51-54 and that they could be dismissed with prejudice. Accordingly, the Court grants Defendants' motion for summary judgment as to Counts 19-20, 23-26, 45-46, and 51-54 and dismisses these claims with prejudice.

**III. The TSA Counts (61-62)**

Only two documents, withheld in full, remain at issue with respect to the TSA Counts.

4

The first withheld document is a "draft of a response to a congressional inquiry regarding the implementation of 49 U.S.C. § 114(h)" ("Draft Response"). The second document is "Draft Policy No. 7- Proposed Policy, Transportation Security Administration (TSA) Air Traveller [sic] Watch [L]ists," which is another draft "policy proposal for implementing 49 U.S.C. § 114(h)" ("Draft Policy"). Pursuant to the First Order, the government has submitted both documents for an *in camera* review. Since the documents at issue do not pertain to Plaintiff, the PA does not apply[2] and the only issue is whether the documents were withheld properly under FOIA Exemption 5. Consistent with FOIA's goal of disclosure, Exemption 5, like all statutory exemptions, is to be narrowly construed. *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355-56 (2d Cir. 2005).

### A. FOIA Exemption 5 Generally

Exemption 5 encompasses traditional discovery privileges, including work-product and deliberative process privileges. *See Wood v. FBI*, 432 F.3d 78, 83 (2d Cir. 2005); *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 421 U.S. 1, 8 (2001). Exemption 5 "also protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions [and] policies are formulated.'" *Wood*, 432 F.3d at 83 (quoting *Sears, Roebuck & Co. v. NLRB*, 421 U.S. 132, 150 (1975)) (internal quotation marks and citations omitted). In determining its applicability, courts should bear in mind the underlying concerns of the Exemption:

---

[2] The PA only allows persons to request records pertaining specifically to themselves. On the initial motions for summary judgment regarding counts 61-62, some documents did pertain to Plaintiff specifically and therefore the PA applied. The documents at issue on the renewed motion do not pertain to Plaintiff. Thus, the Court need only consider the requests vis a vis FOIA.

> [Exemption 5] serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's actions.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (citation omitted). Thus, courts "focus less on the nature of the materials sought and more on the effect of the materials' release." *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987). To qualify under the exemption, a document must be "(1) 'predecisional,' *i.e.*, 'prepared in order to assist an agency decisionmaker at arriving at his decision,' and (2) 'deliberative,' *i.e.*, 'actually . . . related to the process by which policies are formulated.'" *La Raza*, 411 F.3d at 356 (quoting *Grand Cent. P'ship., Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999). "Just because a document satisfies these requirements, however, does not mean that the deliberative process bars its disclosure. An agency may be required to disclose a document otherwise entitled to protection under the deliberative process privilege if the agency has chosen 'expressly to adopt or incorporate by reference [a] . . . memorandum previously covered by Exemption 5 in what would otherwise be a final opinion.' . . . In such a circumstance, the document loses its predecisional and deliberative character, and accordingly, the deliberative process privilege no longer applies." *La Raza*, 411 F.3d at 356 (citations omitted); *accord Coastal States*, 617 F.2d at 866. However, "there must be evidence that an agency has *actually* adopted or incorporated by reference the document at issue; mere speculation will not suffice." *Id*. at 359 (emphasis in original).

6

### B. The Draft Response

The Draft Response was withheld appropriately pursuant to Exemption 5. Preliminary drafts to proposed responses are exempt under the FOIA because "the information in draft form represents the personal opinion of the author, not yet adopted as the final position of the agency." *Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995), *aff'd,* 76 F.3d 1232 (D.C.Cir. 1996) (citing *Coastal States*, 617 F.2d at 866).

Having reviewed the document *in camera,* the Court finds that it falls squarely within Exemption 5. The document is clearly a draft response that includes advice, recommendations, and conclusions not adopted as the final position of the agency. The document is predecisional and deliberative in that it was both drafted to assist in making a final decision and part of the process by which a policy was formulated. The document "reflect[s] the personal opinions of the writer rather than the policy of the agency." *Cuomo*, 166 F.3d at 482. "Moreover, release of the draft[] would inappropriately reveal many editorial judgments made by the agency during the review process." *Judicial Watch*, 880 F. Supp. at 13 (citing *Dudman Commc'ns*, 815 F.2d at 1568-69). The Court grants Defendants' motion for summary judgment on Counts 61-62 as to the Draft Response.

### C. The Draft Policy

The Draft Policy was withheld appropriately pursuant to Exemption 5. First, the document is predecisional and deliberative. It was drafted to assist in making a final decision and was part of the process by which a policy was formulated. The draft contains proposed procedures about effectuating a TSA policy to compile "no fly" and "selectee" lists. The document is not merely "factual," as plaintiff contends, but rather is deliberative in that it

7

illustrates the thought process that contributed to the final version of the policy. Second, the Court has considered the potential effect of the document's release in light of the underlying concerns of the exemption. See *Dudman Commc's*, 815 F.2d at 1568. Here, editorial decisions made by the agency would be revealed if the document were released, because the public would be able to compare the draft and final versions of the policy. "[T]he disclosure of [the material] would expose [the] agency's decisionmaking process in such ways as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* This factor is especially important for decisions pertaining to sensitive subject matter such as compiling watchlists. Disclosure would expose the public to elements of the deliberative process that occurred as the TSA developed policies for composing watchlists as the policy went through rounds of edits – exactly the outcome that Exemption 5 was intended to protect against.

A predecisional document can lose its exempt status if it is adopted formally or referenced to in a final agency decision. *Coastal States*, 617 F.2d at 867; *see also La Raza*, 411 F.3d at 356 (citation omitted). The TSA did not formally or informally adopt the Draft Policy. The version of the policy finally adopted is significantly longer in substance, and nowhere does it reference or refer to the Draft Policy. A predecisonal document is "informally" adopted when a final policy decision references or refers to an internal memorandum or some other predecisional document as the basis for the final determination, *see La Raza*, 411 F.3d at 356; such is not the case here.

As a final matter, there is no non-segregateable material in the Draft Policy that can be released to the public. Accordingly, the document is exempt from disclosure and the government

is entitled to summary judgment on Counts 61-62 with respect to the Draft Policy.

**III.    Counts 67-68**

Counts 67-68 relate to Plaintiff's requested disclosure from the USSS of "all documents that pertain to me, mention me, discuss me, or otherwise list my name," and indicated that searches should be conducted at the following offices: Western District of Pennsylvania, Southern District of New York, Eastern District of New York, and USSS Headquarters.  (First Decl. Of Kathy J. Lyerly ("First Lyerly Decl."), dated April 12, 2004, Ex. 1.)  Count 67 was brought under the FOIA and Count 68 was brought under the PA.

In its First Order, the Court denied both parties' motions for summary judgment.  The Court held that the government's affidavit did not explain (1) how a search of the Master Central Index ("MCI") satisfied a request to search all of the offices listed; (2) whether a search of the MCI would indicate any documents held in any office by the USSS; or (3) whether a search of the specified offices is unnecessary or unfeasible.  Thus, the affidavit was not sufficiently detailed for this Court to conclude that the USSS acted in good faith.  Accordingly, the Court ordered that the government submit a more detailed affidavit articulating why a search of the MCI would satisfy Plaintiff's request.

Defendants have submitted a renewed motion for summary judgment as to Counts 67-68.  They again move for dismissal of the USSS Counts because (1) the USSS conducted an adequate, good faith search for records pertaining to Plaintiff and (2) the documents withheld from release are exempt from disclosure.

**A.    Adequacy of the Search**

"In order to prevail on a motion for summary judgment in a FOIA case, the defending

agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney*, 19 F.3d at 812 (citing 5 U.S.C. § 552(a)(4)(B); *EPA v. Mink*, 410 U.S. 73, 79 (1973)); *see also Shores v. FBI.*, 185 F. Supp. 2d 77, 82 (D.D.C. 2002) (applying adequacy of search analysis to both the PA and FOIA). An agency may meet its burden by submitting a reasonably specific affidavit of the employee responsible for the search that indicates that the agency undertook an adequate search and failed to recover documents or that the documents it did recover were exempt under the FOIA. *See Katzman v. CIA*, 903 F. Supp. 434, 437 (E.D.N.Y. 1995) (citation omitted). A "search is adequate if it is reasonably calculated to discover the requested documents." *Id.* (internal quotation marks and citation omitted). "The crucial issue is not whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents." *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993) (internal quotation marks and citations omitted).

"The agency is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents." *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002) (internal quotation marks and citations omitted). Courts accord a presumption of good faith to detailed, non-conclusory agency affidavits. *See Katzman*, 903 F. Supp. at 437. If, however, an agency's affidavits are conclusory or not "relatively detailed," they are inadequate. *Id.* To avoid summary judgment in favor of the agency based on the agency's adequate affidavits, a requester must show the agency's bad faith. *Tota v. FBI*, 2000 U.S. Dist. LEXIS 11646, at *7 (W.D.N.Y. July 28, 2000) (citing *Carney*, 19 F.3d at 812). Specifically, the requester must present "specific facts showing that documents exist that were nor released by the agency." *Id.*

Here, the government's search was adequate and Plaintiff has made no showing of bad faith. Defendants have submitted reasonably detailed affidavits of the search terms by way of the First Lyerly Decl. and the Second Decl. of Kathy J. Lyerly ("Second Lyerly Decl."). Lyerly is the USSS agent in charge of FOIA/PA requests. (Fist Lyerly Decl. ¶ 1.) In response to the First Order, the government has demonstrated that a search of the MCI satisfied the request to search all of the offices listed. (*See* First Lyerly Decl. ¶¶ 9-10; Second Lyerly Decl. ¶¶ 3-4.) The MCI system is an integrated information network and system of record keeping for information regarding, *inter alia,* investigations. The system is used by the Secret Service headquarters divisions and all field offices, resident offices, resident agencies and protective divisions. "All field offices of the Secret Service enter into the MCI individuals who are subjects in investigative or administrative files maintained by that office." (Second Lyerly Decl. ¶ 4.) Individuals are indexed by name, social security number and/or date of birth and searching the MCI by Plaintiff's name, as the USSS did, was reasonably calculated to reveal any files pertaining to him. (*Id.* at ¶ 5.) Thus, the search at issue was adequate. Defendants' affidavit is detailed and non-conclusory; the Court accords a presumption of good faith to the search. Plaintiff has not set forth any facts showing bad faith on the part of the government. The Court concludes that the search was adequate.

    B.    **Exempt Information**

The government's search revealed only one relevant file which was located at the USSS's Pittsburgh Field office. No other files were indexed under Plaintiff's name or other personal identifying information associated with Plaintiff. Portions of the file were released to Plaintiff, while other portions (documents) were withheld pursuant to FOIA and the PA (*See* Second

11

Lyerly Decl. ¶ 6; First Lyerly Decl. ¶¶ 13-14.) Having located Plaintiff's file, Defendants proceeded to determine that there were no records available to Plaintiff under the PA pursuant to 5 U.S.C. § 552a(j)(2), which exempts from disclosure systems of records that are "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws." Some of these documents, however, were available to the Plaintiff under the FOIA and were released. Defendants maintain that the remaining documents requested by Plaintiff were properly withheld or redacted pursuant to FOIA exceptions found in sections (b)(2), (b)(7)(C), and (b)(7)(E).

Having determined, *supra*, that the government's search was adequate, the Court's focus turns to whether portions of the discovered information were properly withheld. The FOIA and the PA have competing goals, which are, respectively, information access versus information protection. Because of these competing goals, "each [statute] provides or limits access to material not opened or closed by the other." *Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 78 (D.C. Cir. 1982). Requestors like Plaintiff, who seek broad access to information, make their requests under both statutes. To facilitate broad access, Congress added a provision to the PA that specifies that an exemption under the FOIA is not a bar to release files under the PA, and a PA exemption is not a bar to release under the FOIA. *See* 5 U.S.C. §522a(t). In sum and substance, information discoverable under both statutes is withheld properly when it is exempt under both statutes. Accordingly, in determining whether Defendants properly withheld material, the Court must examine whether the withheld material is exempt under both statutes.

Plaintiff does not contest the withholding of special agent identification numbers or Federal Express billing numbers for the Secret Service, pursuant to 5 U.S.C. § 552(b)(2); or of

the names, signatures, and identification numbers of Secret Service agents and the names, addresses, brokerage account numbers, and financial information belonging to third parties, pursuant to 5 U.S.C. § 552(b)(7)(C). (*See* Pl.'s Omnibus Pleadings Relating to Def. United States Secret Service 4-5.) Although Plaintiff does not admit that the exemptions apply to this information, given his concessions and that his "goal in this action is not to obtain this kind of information," Defendants' motion for summary judgment relating to this specific information is granted.

Plaintiff, however, does contest the withholding of (1) the name of a type of investigation conducted by the Secret Service that is not generally known by the public, pursuant to 5 U.S.C. §§ 552(b)(2) ("Exemption 2") & 552(b)(7)(E) ("Exemption 7(E)"); and (2) information about possible criminal activity engaged in by third parties, pursuant to 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"). The Court shall therefore turn its attention to whether this information is exempt from disclosure.

1. <u>PA Exemption</u>

Defendants properly withheld both records under the PA. The PA exempts from disclosure records that are

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . . and which consist of . . . (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual, or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).  "An agency's right to invoke the exemption involving criminal investigation records . . . is not absolute."  *Holz v. Westphal*, 217 F. Supp. 2d 50, 54 (D.D.C. 2002).  In order to qualify for the exemption, a record must satisfy two criteria.  *See Doe v. FBI*, 936 F.2d 1346, 1353 (D.C. Cir. 1991); *Holz,* 217 F. Supp. 2d at 55.  "First, 'the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or the maintenance of national security.'"  *Doe,* 936 F.2d at 1353 (quoting *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1991)).  To make this showing, the agency "must demonstrate a connection between its investigation and the existence of a 'possible security risk or violation of federal law.'"  *Id.* (quoting *Pratt*, 673 F.2d at 420).  "Second, 'the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least 'a colorable claim' of its rationality.'"  *Id.* (quoting *Pratt*, 673 F.2d at 421).  In applying this second requirement, "a reviewing court 'should be hesitant to second-guess a law enforcement agency's decision to investigate if there is a plausible basis for its decision.'"  *Id.* at 1353-54 (quoting *Pratt*, 673 F.2d at 421).

As a preliminary matter, the United States Secret Service is undisputedly an agency with a principal function related to the enforcement of federal laws and the maintenance of national security, and the records at issue are documents in a criminal investigative file.  Beyond that, the records here satisfy the second criterium set forth above.  The documents "reference the investigations and arrests of other individuals for trafficking in unauthorized access codes, the conviction of one for wire fraud, money laundering, and access device fraud."  (Def.'s Mem. 18; *see also* First Lyerly Decl. Ex. 10.)  The investigation was clearly related to the enforcement of federal laws.  That a conviction resulted from the investigation indicates a legitimate connection

14

between the investigation and the violation of federal laws. The resulting conviction further indicates the USSS had a plausible basis for investigating, and this Court shall not second-guess the agency's decision to conduct the investigation. The documents satisfy the requirements of 5 U.S.C. § 552a(j)(2), and, thus, no documents were available to Plaintiff under the PA.

      2.     <u>FOIA Exemptions</u>

          a.     Exemption 2

Exemption 2 protects information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Defendants invoke Exemption 2 to withhold the name of a type of investigation that is not generally known by the public. Investigative techniques are protected under the exception so long as the agency demonstrates that disclosure of the material would risk circumvention of federal statutes or regulations. *See Massey v. FBI*, 3 F.3d 620, 622 (2d Cir. 1993). The terms "personal rules and practices" in Exemption 2 "encompass not merely minor employment matters, but may cover other rules and practices governing agency personnel, including significant matters like job training for law enforcement personnel." *Crooker*, 670 F.2d at 1056. The investigative technique here can be properly categorized as "internal." According to Defendants, the withheld technique is valuable to the USSS and its disclosure would reasonably hinder law enforcement efforts. Defendants maintain:

> It is not generally known that the Secret Service conducts this type
> of investigation, and a potential offender might not have
> considered this possibility. If the name of this type of investigation
> was revealed, it could allow the potential offender to undermine
> the investigative mission of the Secret Service by modifying his or
> her actions so as to avoid detection and circumvent the
> investigative efforts of the Secret Service.

First Lyerely Decl. ¶ 26. Implicit in Defendants' argument is that by revealing the name of the

investigation, the investigative technique will be revealed.

If, in fact, disclosure of the name of the investigation would risk circumvention of the law, then the name of the investigation is exempt from disclosure pursuant to Exception 2. The difficulty here is that on the present record the Court cannot determine whether disclosure of the name of the investigation would risk circumvention of the law. Accordingly, Defendants are directed to submit the withheld information for the Court's *in camera* review. *See generally id.* at 1328; *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996).

### b. Exemption 7 Generally

Exemption 7 of the FOIA applies to "records or information compiled for law enforcement purposes" if one of the succeeding six circumstances under the section (subsections A through F) is present. 5 U.S.C. § 552(b)(7). Here, the USSS is most certainly a law enforcement agency, and the information at issue is part of a criminal investigative file. Thus, the redacted information is information compiled for law enforcement purposes. *See FBI v. Abramson*, 456 U.S. 615, 622 (1982). The next question is whether any of the subsections apply.

### 1. Exemption 7(C)

"Exception 7(C) protects information the disclosure of which 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Mays v. DEA*, 234 F.3d 1324, 1327(D.C. Cir. 2000) (quoting 5 U.S.C. § 552(b)(7)(C)). Defendants have invoked the exemption to protect "information about possible criminal activity engaged in by third parties." (First Lyerly Decl. ¶ 30.) The government, however, in its moving papers, only address exemption 7(C) as it applies to the names, signatures, and identification numbers of Secret Service agents and the names, addresses, brokerage account numbers, and financial information

belonging to third parties, information all of which Plaintiff has conceded he is not seeking in this action. The relevant question, thus, becomes whether information about possible criminal activity engaged in by third parties, once all personal identifiers are redacted, is exempt under Exception 7(C). The United States Court of Appeals for the District of Columbia has stated:

> Exemption 7(C) ordinarily permits the Government to withhold only the specific information to which it applies, not the entire page or document in which the information appears; any non-exempt information must be segregated and released . . . unless the "exempt and nonexempt information are 'inextricably intertwined,'" such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value.

*Mays*, 234 F.3d 1327 (quoting *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981)). Thus, the information about possible criminal activity engaged in by third parties is not necessarily exempt under 7(C) even though the names or identifying information is. *See id.* Necessary to this showing is "a relatively detailed description" of the withheld documents. *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993). The Court in unable to determine on the present record whether the information that is subject to disclosure is so inextricably intertwined with properly exempt information that redaction would be burdensome or that the redacted document would be unintelligible. Accordingly, Defendants are directed to submit the withheld information for the Court's *in camera* review.

### 2. Exemption 7(E)

Exception 7(E) protects against the release of information which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably

be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Defendants invoke Exception 7(E) to withhold the name of an investigation routinely used by the USSS. The investigative name at issue is the same for which Defendants seek protection under Exemption 2, and for the reasons set forth discussing the application of Exemption 7(C), *supra*, the government is directed to submit the withheld documents for the Court's *in camera* review.

**Conclusion**

In sum, the Court grants the Defendants' motion for summary judgment on Counts 19-20, 23-26, 45-46, 51-54, and 61-62. The motion for summary judgment on Counts 67-68 is denied, without prejudice, as the evidence currently before the Court is inadequate for the Court to make a final determination. Within thirty (30) days of the date hereof, (1) the government shall submit to the Court for its *in camera* review the withheld information about (a) the name of an investigation routinely used by the USSS and (b) possible criminal activity engaged in by third parties; and (2) the parties shall advise the Court as to the status of Count 71 (Renewal Contract).

**SO ORDERED.**

Dated: Central Islip, New York
      July 29, 2008

/s/
Denis R. Hurley
Senior District Judge